BANCO DE LA VIVIENDA DE PUERTO RICO, demandante y peticionario, *v.* RAFAEL CARLO ORTIZ y OTROS, demandados y recurridos.

*Número:* CE-89-17          *Resuelto:* 16 de junio de 1992

732

*René José Muñoz del Castillo*, abogado del peticionario; *Gabriel García Maya*, de *Servicios Legales de Puerto Rico, Inc.*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El 15 de septiembre de 1982 el Banco de la Vivienda (Banco) presentó una demanda en ejecución de hipoteca contra Rafael Carlo Ortiz, su esposa Rafaela Carlo, y la Sociedad de Gananciales compuesta por ambos, ante el Tribunal Superior de Puerto Rico, Sala de Mayagüez. En la misma se alegó, en lo pertinente, que el Banco era el tenedor de buena fe de un pagaré hipotecario otorgado por los demandados en garantía del pago del principal e intereses de un préstamo que le había sido concedido a éstos; obligación que dejó de satisfacer la parte demandada. Al declarar vencida la deuda, el Banco reclamó diecisiete mil cuatrocientos setenta y cinco con sesenta y ocho centavos ($17,475.68) por concepto del principal; intereses sobre dicha suma al ocho por ciento (8%) anual, más la suma de treinta y cuatro dólares con siete centavos ($34.07) para los gastos y cargos relacionados en la escritura, y mil ochocientos veintitrés dólares ($1,823) para costas y honorarios de abogado.

Los demandados contestaron la demanda, levantando varias defensas afirmativas,[1] instaron una reconvención contra el Banco y, a su vez, presentaron una demanda contra terceros contra el Departamento de la Vivienda, la Corporación de Renovación Urbana y Vivienda y el E.L.A., entre otros.

Desde el 16 de mayo de 1985, el Banco no realizó gestión alguna con respecto a este caso. A solicitud de los deman-

---

[1] Entre éstas, los demandados alegaron que la obligación hipotecaria era nula porque la obligación principal, la casa construida con el préstamo, era una de asbesto-cemento. La referida casa se alega que fue construida a instancia y permiso del demandante a quien se le imputa conocimiento del riesgo y peligro a la salud del asbesto. Se alegó también que hubo vicio del consentimiento; error in-substancia; que era ilícito exigir el cumplimiento de una obligación cuando el objeto de la misma es dañino. Esto a su vez se señala como contrario a la moral y al interés público. La parte demandada alegó, además, que el Banco había incurrido en una práctica violatoria a la igual protección de las leyes al condonar la deuda por hipotecas sobre otras casas de asbesto pero exigir el cumplimiento de la obligación de los codemandados.

dados y luego de atendidas las posiciones de las partes en el pleito, el 29 de junio de 1987, el foro de instancia dictó sentencia archivando el pleito, al amparo de las disposiciones de la Regla 39.2(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Posteriormente, y en respuesta a una moción de relevo bajo la Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, presentada oportunamente por el Banco, el tribunal de instancia dictó una orden dejando sin efecto la sentencia de archivo. Luego de una infructuosa moción de reconsideración, la parte demandada acudió ante este Tribunal mediante la radicación del correspondiente recurso de *certiorari*. En el mismo alegó que el foro de instancia había incurrido en abuso de discreción al reabrir el pleito, dejando sin efecto su sentencia de archivo. Expedido el auto solicitado, el 20 de enero de 1988 emitimos Sentencia (CE-87-742) mediante la cual revocamos la orden del 15 de octubre de 1987 que dejaba sin efecto la sentencia de archivo del 29 de junio de 1987, reinstalando la misma. Concluimos entonces que de los autos, y del trámite procesal del caso, resultaba obvio *el patrón de dejadez y falta de diligencia* proseguido por el Banco, patrón de conducta que no había podido justificar.[2]

Devuelto el caso al foro de instancia, el 31 de agosto de 1988 la parte demandada presentó una moción sobre "ejecución de sentencia y señalamiento de bienes". Apéndice 10. En la misma se le informó al tribunal que las gestiones con el Banco para obtener el pagaré hipotecario habían resultado infructuosas. *Solicitaron una orden del tribunal compeliendo al Banco a entregar el referido pagaré para su cancelación en el Registro.*

---

[2] La justificación que en revisión señaló el Banco de la Vivienda se refería a que el socio del bufete que lo representaba se vio imposibilitado de ejercer su profesión a consecuencia de una afección cardíaca; además, que la sociedad legal a la cual pertenecía se había disuelto. El Banco no expuso esta razón en su moción de relevo ante el foro de instancia.

El tribunal de instancia *originalmente* denegó la solicitud de los demandados. En la orden que a esos efectos emitiera, señaló que "[n]ada impide que el Banco demandante inste una segunda acción para recobrar el pago de[l] principal e intereses correspondiente a las mensualidades vencidas con posterioridad al 29 de junio de 1987". Apéndice 11, pág. 33. El tribunal consideró que el efecto de la cosa juzgada no podía beneficiar a los demandados más allá de lo reclamado en la demanda. Por ello concluyó que el Banco, a pesar de la desestimación, podía instar una acción futura por otra razón que no fuera la falta de pago de las mensualidades alegadas en la demanda. La parte demandada solicitó reconsideración, la cual fue acogida, señalándose una vista para la discusión de la misma.

*El foro de instancia reconsideró*; a esos efectos emitió una orden mediante la cual, a tenor con lo dispuesto en la Regla 51 de Procedimiento Civil, 32 L.P.R.A. Ap. III, *ordenó la entrega del pagaré debidamente endosado para su cancelación*. La parte demandante presentó una moción solicitando que la referida "orden de ejecución" fuese dejada sin efecto o, en la alternativa, que se consignaran determinaciones de hechos y de derecho. A esto se opuso la parte demandada. El tribunal señaló vista; durante la misma las partes tuvieron la oportunidad de argumentar sus respectivas posiciones. El tribunal ratificó la orden dictada, concediéndole a la parte demandante término para que produjera el pagaré o, de lo contrario, consignara el importe del mismo. La solicitud de determinaciones de hechos fue declarada no ha lugar.

Inconforme, el Banco de la Vivienda acudió ante este Tribunal. En apoyo de su petición de *certiorari*, el Banco le imputó al foro de instancia haber errado al:

1. ...no formular las conclusiones de derecho correspondientes a la denominada Orden de Ejecución de Sentencia.
2. ...ordenar ... la entrega del pagaré ... para su cancelación

en el Registro de la Propiedad por ser inaplicable la doctrina de cosa juzgada. Petición, pág. 5.

Expedimos el recurso solicitado. Resolvemos.

## I

■ Nos corresponde en este caso determinar el alcance y efecto de la Sentencia que emitiéramos el 20 de enero de 1988,[3] reinstalando una sentencia de archivo por razón de inactividad.

■ La Regla 39.2(b) de Procedimiento Civil, ante, dispone, en lo pertinente, que:

(b) El juez administrador ordenará la desestimación y archivo de todos los asuntos civiles pendientes en los cuales no se hubiere efectuado trámite alguno por cualquiera de las partes durante los últimos seis meses, a menos que tal inactividad se le justifique oportunamente.

■ Procede que se enfatice que la Regla 39.2(c), 32 L.P.R.A. Ap. III, establece que "[a] menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se hubiere dictado por falta de jurisdicción, o por haber omitido acumular una parte indispensable, *tienen el efecto de una adjudicación en los méritos*". (Énfasis suplido.)

En nuestra Sentencia del 20 de enero de 1988 tuvimos la oportunidad de evaluar la totalidad de las circunstan-

___

[3] El error sobre la denegatoria del juez de instancia a hacer conclusiones de derecho nos parece inmeritorio. La parte peticionaria pretendía realmente que se fundamentara la decisión que hoy revisamos. Los fundamentos son cuestiones de derecho que se encuentran esbozados en la Orden de Ejecución que fue dejada en vigor. Por otro lado, "la revisión se da contra la sentencia y no sus fundamentos". *Sánchez v. Eastern Air Lines, Inc.*, 114 D.P.R. 691, 695 (1983), citando a *Collado v. E.L.A.*, 98 D.P.R. 111, 114 (1969), y *Rodríguez v. Serra*, 90 D.P.R. 776, 777 (1964). Véanse, además: *Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1988), y *Villanueva v. Hernández Class*, 128 D.P.R. 618 (1991).

cias y la conducta procesal de la parte demandante. Esto nos llevó a concluir que debía reinstalarse la sentencia original dictada por el Tribunal Superior archivando el pleito por inactividad. En aquel entonces expresamos que:

> Un análisis y balance racional y justiciero de todo el expediente ante nos, y de las normas de derecho aplicables *lamentablemente* nos lleva a concluir que en relación con la falta de diligencia del recurrido no mediaron circunstancias que ameritasen que el tribunal lo relevase del efecto de la sentencia archivando el caso por inactividad. *No podemos premiar su conducta.* (Énfasis suplido.)

No cabe la menor duda de que una desestimación por inactividad bajo la referida Regla 39.2 tiene el efecto de una adjudicación en los méritos. Véase *Echevarría Jiménez v. Sucn. Pérez Meri*, 123 D.P.R. 664 (1989). En *Sucn. Rosario v. Sucn. Cortijo*, 83 D.P.R. 678, 684 (1961), al referirnos a la conveniencia de que los tribunales eliminen de sus congestionados calendarios los pleitos por inactividad, enfatizamos el cuidado que debe ejercerse en todo trámite de archivo por razón de que "en términos generales una sentencia de archivo tiene la autoridad de cosa juzgada ...".[4]

La base estatutaria de nuestra doctrina de cosa juzgada lo es el Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343. En lo pertinente, el mismo establece que:

> Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.
> Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.

---

[4] Véanse, también, *Costas Purcell v. Tribunal Superior*, 88 D.P.R. 10 (1963); *Souchet v. Cosío*, 83 D.P.R. 758, 762 (1961), según citados en *Arce v. Club Gallístico de San Juan*, 105 D.P.R. 305, 307 (1976), y *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807, 814 (1986), donde se sostuvo la desestimación del pleito por la "crasa falta de diligencia en la tramitación del mismo".

Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior; o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas.

■ En *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 732–733 (1978), explicamos que el efecto de aplicar la doctrina de cosa juzgada es "que la sentencia dictada en un pleito anterior *impide* que se litiguen en un pleito posterior entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas *y aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción anterior*". (Énfasis suplido.)[5]

■ Hay que mantener presente, sin embargo, que este Tribunal ha rechazado la aplicación automática de la doctrina de cosa juzgada; en especial la que surte como efecto de una desestimación por inactividad, entre otras, por la política judicial de que los casos se ventilen en sus méritos. Cuando los fines de la justicia en un caso lo han requerido, hemos intervenido para permitirle a una parte reivindicar sus derechos o que se diluciden las controversias en los méritos. A esos efectos, véanse: *Pérez v. Bauzá*, 83 D.P.R. 220, 226 (1961); *Millán v. Caribe Motors Corp.*, 83 D.P.R. 494, 506 (1961); *Arce v. Club Gallístico de San Juan*, 105 D.P.R. 305, 308 (1976); *Garriga Gordills v. Maldonado Colón*, 109 D.P.R. 817, 822 (1980); *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494, 498 (1982); *Echevarría Jiménez v. Suc. Pérez Meri*, ante; *Ramos González v. Félix Medina*, 121 D.P.R. 312 (1988).[6]

---

[5] Citando a *Mercado Riera v. Mercado Riera*, 100 D.P.R. 940, 950 (1972); *Isaac Sánchez v. Universal C.I.T. Credit*, 95 D.P.R. 372, 382 (1967); entre otros.

[6] En *Pérez v. Bauzá*, 83 D.P.R. 220 (1961), se rechazó aplicar la doctrina de cosa juzgada en un caso de filiación de un menor. En *Millán v. Caribe Motors Corp.*, 83 D.P.R. 494 (1961), el procedimiento de reposesión no constituyó cosa juzgada frente a la demanda del comprador por dolo y nulidad de contrato. Las gestiones extrajudiciales entre los abogados en cumplimiento con un acuerdo del tribunal se

## II

En el caso de epígrafe, la parte peticionaria, el Banco, alega que como es custodio de fondos del erario público, el caso reviste el interés público que justifica la no aplicación de la doctrina de cosa juzgada, *Ramos González v. Félix Medina*, ante, y, en consecuencia, la revocación de la orden de ejecución emitida por el tribunal de instancia. Esto es, se nos solicita que, *por excepción*, decretemos que la sentencia de archivo por inactividad no constituya impedimento para que el Banco pueda instar nuevamente una demanda de ejecución de hipoteca contra los demandados.

▇▇▇▇▇ Como parte de los poderes que por ley le fueron conferidos al referido Banco, el mismo debe "[a]ctuar como depositario de fondos del Estado Libre Asociado de Puerto Rico o de los Estados Unidos de [Nortea]mérica". 7 L.P.R.A. sec. 910(b). Esta función ciertamente reviste un alto grado de interés público. Sin embargo, la comparecencia del Banco como demandante en el caso de epígrafe ha sido bajo otro de los poderes o funciones que por ley se le delegó. El Inciso (c) de la citada Sección 910(c) autoriza al Banco a

> [p]restar dinero, con o sin garantía ... a cualquier persona, firma, corporación ... para usarse con el propósito de construir, adquirir, refinanciar ... cualquier casa destinada o que se haya de destinar a vivienda ... siempre que sean para personas y familias de ingresos bajos o moderados .... (Énfasis suplido.)

---

consideraron prueba del interés de los demandantes en el pleito en *Arce v. Club Gallístico de San Juan*, ante. En *Garriga Gordills v. Maldonado Colón*, 109 D.P.R. 817 (1980), la demora en conseguir representación legal adecuada no se consideró irrazonable. El archivo de un caso fue dejado sin efecto en *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494 (1982), porque la parte no había sido informada del incumplimiento del abogado con la orden del tribunal ni de la falta de diligencia en la tramitación del caso. Véanse, además, *Echevarría Jiménez v. Sucn. Pérez Meri*, 123 D.P.R. 664 (1989), y *Ramos González v. Félix Medina*, 121 D.P.R. 312 (1988), donde por consideración al interés público envuelto (la pureza de los procedimientos judiciales y la confianza en sus instituciones) ante la imputación de actos graves a tres (3) funcionarios de la Rama Judicial, no se le reconoció el efecto de cosa juzgada a una sentencia desestimatoria por inactividad dictada por el Tribunal Federal.

La concesión de estos préstamos a personas de bajos o moderados recursos económicos, no hay duda, constituye una función social que viabiliza o pone en vigor la política pública del E.L.A. de proveer viviendas para este necesitado grupo de nuestra población.([7]) Si bien es cierto que la función como prestamista está íntimamente relacionada a la política pública del Estado, el Banco, en su capacidad como acreedor hipotecario, *no es fundamentalmente distinto a otros bancos o instituciones financieras que presentan demandas en ejecución de hipoteca en nuestro país.*([8])

Consistente con nuestra Sentencia del 20 de enero de 1988 *no* podemos acoger el planteamiento del Banco. A nuestro juicio —y en vista de las alegaciones de la parte demandada en su contestación a la demanda, reconvención y demanda contra tercero, sobre dolo, vicio del consentimiento, auspicio del Banco de la construcción de casas de asbesto-cemento, el riesgo a la salud envuelto en dicha conducta y donde el Banco demandante ha actuado con inexplicada displicencia— en una situación como la presente, amerita mayor protección la parte demandada.

Como expresamos en nuestra Sentencia anterior, lo que ahora reiteramos, "[s]i bien es cierto que como regla general no favorecemos la privación de su día en corte a un litigante, ésta no es una medida procedente en casos como el presente, en que *no hay duda de la crasa falta de diligencia de la parte contra quien se toma la sanción y no*

---

([7]) Los propósitos identificados en la ley que crea el Banco y Agencia de Financiamiento de la Vivienda de Puerto Rico son: "desarrollar más efectivamente [la] responsabilidad gubernamental de fomentar el bienestar de sus habitantes y la economía de Puerto Rico ...". 7 L.P.R.A. sec. 901. Refiérase, además, a la Exposición de Motivos de la Ley Núm. 218 de 23 de julio de 1974, Leyes de Puerto Rico, pág. 142.

([8]) En la demanda de ejecución de hipoteca por la vía ordinaria el referido banco comparece como "actual tenedo[r] de buena fe del pagaré hipotecario ... habiéndolo adquirido por valor recibido en el curso ordinario de sus negocios". Apéndice 5, pág. 9. En ninguna de las alegaciones de la demanda se alude a que el préstamo u obligación principal garantizada fue una en beneficio de las personas de bajos o moderados recursos económicos, bajo la citada ley.

*median circunstancias que atenúen la misma".* (Énfasis suplido.) Apéndice 8, pág. 6.

## III

En resumen, el Banco optó por ejecutar la garantía hipotecaria en pago de la obligación principal mediante la radicación de un pleito de ejecución de hipoteca por la vía ordinaria. Por su "patrón de dejadez y falta de diligencia", se archivó el pleito que radicara bajo la Regla 39.2(b) de Procedimiento Civil, ante. Ese archivo de su causa de acción, que conlleva una adjudicación en los méritos, implica que el Banco perdió la oportunidad de ejecutar su garantía hipotecaria. Su conducta procesal tiene la consecuencia de "extinguir" el derecho inscrito, o sea la garantía hipotecaria. Sobre la *extinción* de la hipoteca, nos ilustra Roca Sastre lo siguiente:

> Por su extinción la hipoteca desaparece en la realidad jurídica, quedando en su virtud liberado del gravamen hipotecario el bien sobre el cual se había constituido.
> Esta extinción puede ser total o parcial según que afecte a todo el derecho real de hipoteca, desapareciendo el mismo íntegramente, o que reduzca simplemente la cuantía de la responsabilidad hipotecaria.
> La extinción, con vistas al acreedor, puede ser *voluntaria* (renuncia de la hipoteca) o *forzosa* (prescripción de la acción hipotecaria); y puede ser *mixta* también (cuando, por ejemplo, la hipoteca se extingue a consecuencia de la remisión del crédito). (Énfasis en el original suprimido y énfasis suplido.) R.M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Vol. 2, pág. 1179.

Desaprovechada y perdida por el Banco —debido a su negligencia— la acción de ejecución de hipoteca por la vía ordinaria que provee nuestro ordenamiento jurídico, estamos ante un caso de "extinción forzosa" de la hipoteca, Roca Sastre, *op. cit.*, procediendo entonces la cancelación del gravamen sobre el inmueble de los demandados.

Por los fundamentos expresados anteriormente, *se confirma la orden de ejecución del 13 de octubre de 1988. Se devuelve el caso al foro de instancia para procedimientos ulteriores consistentes con lo aquí resuelto.*

El Juez Asociado Señor Fuster Berlingeri disintió sin una opinión escrita.