*1060 TEXTO COMPLETO DE LA RESOLUCIÓN
Los peticionarios, Caribbean Anesthesia Management, Inc., también conocida por Dorado Heaith, Inc., y el Sr. José L. Quirós, nos piden que revisemos una resolución dictada por el Tribunal de Primera Instancia, mediante la cual se negó a desestimar la demanda presentada por Caribbean Hospital Corporation, Inc. Por los fundamentos que discutiremos, se deniega la expedición del recurso de certiorari presentado y, en consecuencia, se declara sin lugar la moción en auxilio de jurisdicción sometida.
I
El 25 de enero de 1999, Caribbean Hospital Corporation, Inc., (Caribbean Hospital) instó ante el Tribunal de Primera Instancia, Sala de Arecibo, una demanda en cobro de dinero. Solicitó que se ordenara el embargo preventivo de bienes contra Caribbean Anesthesia Services, Inc. (Anesthesia Services). Alegó que el 14 de agosto de 1997 suscribió un contrato de compraventa mediante el cual le vendió a dicha parte todos los activos relacionados con la operación del Hospital de Area de Manatí por el precio de tres millones de dólares, de los cuales 2.3 millones habrían de pagarse en los plazos pactados en el contrato. Alegadamente, ésta no cumplió con su obligación dentro del plazo acordado, por lo que acudió al foro judicial para requerir el pago de 1.6 millones de dólares, honorarios de abogados e intereses vencidos a la fecha de la presentación de la demanda.
El 17 de febrero de 1999, Anesthesia Services solicitó una prórroga para contestar la demanda, una transferencia de vista y una solicitud de traslado del caso a la Sala de San Juan del Tribunal de Primera Instancia, de conformidad con la Regla 3.5 de las de Procedimiento Civil. 32;L.P.R.A. Ap. Ill, R. 3.5. Conforme a lo pedido, el caso fue trasladado a la Sala de San Juan. Para el mes de junio de 1999, Anesthesia Services contestó la demanda. Sometió también una reconvención la cual fue contestada el 26 de agosto de ese año.
El 2 de julio de 2003, Caribbean Hospital solicitó autorización al Tribunal de Primera Instancia para enmendar la demanda y añadir nuevas partes y causas de acción, pedido que fue concedido. Así pues, se añadió a la causa de acción original de cobro de dinero contra Anesthesia Services, cuatro nuevas causas de acción: 1) cobro de dinero de deudas asumidas por Anesthesia Services y satisfechas por Caribbean Hospital; 2) se alegó que Anesthesia Services era responsable solidariamente por fraude de acreedores y como “alter ego”\ y 3) abuso del derecho.
En cuanto a las causas de acción por responsabilidad por fraude de acreedores y como “alter ego", se añadieron otros codemandados; [1] entre ellos, a los peticionarios en el caso ante nuestra consideración, Quirós y Caribbean Anesthesia Services Management (CAS Management).
*1061 En la referida enmienda, se alegó que mientras Caribbean Hospital y Anesthesia Services negociaban durante 1997 el contrato mediante la cual la última se comprometió a adquirir los activos y pasivos relacionados con el contrato de operación del hospital, Anesthesia Services creó una corporación, CAS Management, ahora Dorado Health, para que fraudulentamente asumiera la operación y eventual compra del hospital, que ya para esa fecha era propiedad del Departamento de Salud de Puerto Rico (Departamento). Caribbean Hospital alegó además que posteriormente, el 17 de septiembre de 1998, CAS Management adquirió el Hospital directamente del Departamento, sin haber notificado a Caribbean Hospital y con el fin de defraudarla. Basado en lo anterior, Caribbean Hospital solicitó que se descorriera el velo corporativo de Anesthesia Services y CAS Management, para imponerle responsabilidad personal y solidaria a todos los codemandados por fraude de acreedores, incluyendo a los peticionarios.
CAS Management contestó las alegaciones el 28 de junio de 2004. En ésta, negó las imputaciones hechas en la demanda enmendada y expresó que no procedía descorrer el velo corporativo por no ser un alter ego de Anesthesia Services. Adujo que Anesthesia Services y CAS Management no compartían ni un solo accionista, director u oficial, ni tienen relación alguna entre sí, ni negocios, por lo que no existía identidad de intereses o propiedad entre ellas. Asimismo, sostuvo que tampoco procedía descorrer el velo corporativo de dicha entidad, porque no fue creada ni existe para cometer fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad o defender un crimen, sino que es una corporación creada y mantenida para llevar a cabo propósitos comerciales legítimos. Además, levantó como defensa que había ausencia de parte indispensable para dirimir el pleito.
Por su parte, el peticionario Quirós también contestó la Demanda enmendada. Adujo que era el único codemandado que tenía interés propietario en CAS Management. Sostuvo, al igual que CAS Management, que Anesthesia Services y CAS Management no compartían accionistas, directores ni oficiales y negó relación alguna, o negocios entre ambas corporaciones, por lo que no había identidad de intereses o propiedad entre ellas. Asimismo, planteó como defensa afirmativa la ausencia de parte indispensable en el pleito.
El 2 de marzo de 2006, CAS Management presentó una contestación enmendada, mediante la cual incluyó una reconvención contra Caribbean Hospital, y el reclamo de $2,839,902.31, por concepto de reembolso de sumas que fueron pagadas por CAS Management.
El 1ro. de septiembre de 2006, Caribbean Hospital presentó una solicitud para enmendar nuevamente sus alegaciones. Mediante ésta, añadió dos nuevas causas de acción: una bajo la Ley Contra el Crimen Organizado y Lavado de Dinero, al amparo de la Ley 33 de 30 de agosto de 1992, 25 L.P.R.A. See. 971; y otra sobre nulidad de contrato y restitución del derecho de adquisición. Tras escuchar los argumentos de las partes a favor y en contra de la concesión de la autorización para enmendar la demanda, el foro primario autorizó la enmienda.
A raíz de dicha enmienda, los peticionarios Quirós y CAS Management, ahora Dorado Health, solicitaron la desestimación de todas las causas de acción contra ellos. Argumentaron que las primeras causas de acción, en torno al cobro de dinero de compraventa de las operaciones del hospital y cobro de dinero de deudas asumidas por Anesthesia Services y satisfechas por Caribbean Hospital, no estaban dirigidas contra los peticionarios. En cuanto a la causa de acción por responsabilidad solidaria por fraude de acreedores y “alter ego”, adujeron que éstas habían caducado, y que de no haber caducado, Caribbean Hospital no alega hechos que justifiquen la concesión de un remedio, en vista de que las alegaciones presentadas no satisfacen los criterios exigidos por nuestro ordenamiento para establecer una reclamación de rescisión por fraude de acreedores ni los criterios para descorrer el velo corporativo.
En cuanto a la causa de acción por nulidad del contrato de compraventa del Hospital, suscrito entre el Departamento y CAS Management, Quirós y CAS Management, ahora Dorado Health, sostuvieron que Caribbean Hospital carece de legitimación, por falta de una parte indispensable, el Estado Libre Asociado de Puerto Rico (E. *1062 L.A.), ya que este último es parte contractual. Además, expresaron que según los hechos alegados, no se configura una causa de acción por daños y perjuicios por fraude y crimen organizado, ni se justifica la concesión de un remedio en tomo a la causa de acción por abuso del derecho.
Caribbean Hospital se opuso a la moción de desestimación, a la que se unieron varios codemandados. Como parte de su oposición, solicitó autorización para enmendar nuevamente la demanda e incluir al E.L.A. en el pleito, tras admitir que sus intereses podrían verse afectados. Además, sostuvo que Quirós y CAS Management, ahora Dorado Health, responden por las deudas asumidas por la codemandada Anesthesia Services en la compraventa de las operaciones del hospital. Expresó que CAS Management y Quirós responden de manera solidaria, debido a que la compraventa del contrato de operación del hospital, se realizó de manera fraudulenta, por lo que insistió en que se descorriera el velo corporativo. A tenor de ello, expresaron que las primeras dos causas de acción también van dirigidas contra los peticionarios. Asimismo, argüyó que la causa de acción por nulidad de la compraventa no ha caducado y aclaró que el remedio solicitado, en cuanto al contrato de compraventa del hospital, no es la rescisión del contrato, sino descorrer el velo de las corporaciones Anesthesia Services y CAS Management, para que se le imponga responsabilidad a los accionistas de ambas corporaciones.
Luego de recibir réplica y dúplica de las posiciones de ambas partes, el foro primario declaró sin lugar la moción de desestimación presentada, de cuya resolución recurren los peticionarios. En su escrito, aducen que erró el Tribunal de Primera Instancia al no desestimar la causa de acción por nulidad de contrato a pesar de faltar una parte indispensable y a pesar de haber expirado el término de caducidad para solicitar dicho remedio; al no desestimar la causa de acción para descorrer el velo corporativo, aun cuando la demanda enmendada no alega hechos que lo justifiquen; al no desestimar la causa de acción bajo la ley de crimen organizado, pese a que la demanda no alega hechos que justifiquen la concesión de un remedio ni configuran ninguna violación de la ley; y al no desestimar la causa de acción por abuso del derecho, en vista de que es imprecisa y no expone hechos que justifiquen la concesión de remedio.
Conjuntamente con su escrito inicial de certiorari, los peticionarios solicitaron que dictásemos orden en auxilio de jurisdicción. Concedimos término a la parte recurrida, Caribbean Hospital, para expresarse. Con el beneficio de su comparecencia, resolvemos.
II

La moción de desestimación por dejar de exponer una reclamación que justifique la concesión de remedio

La Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 10.2, permite al demandado solicitar que se desestime la demanda en su contra cuando se configura alguna de las razones allí esbozadas. Ante una moción de desestimación, por razón de que la demanda no expone una reclamación que justifique la concesión de un remedio, o de sentencia por las alegaciones, el tribunal de instancia no está obligado a exponer en su sentencia las determinaciones de hechos en que sustente su decisión. Roldán Rosario y otros v. Lutrón, S.M., Inc., 151 D.P.R. 883, 891 (2000), pág. 889.
A los fines de disponer de una moción de desestimación, el tribunal está obligado a dar por ciertas y buenas todas las alegaciones fácticas de la demanda radicada y que hayan sido aseveradas de manera clara. Roldán Rosario y otros v. Lutrón, S. M., Inc., supra; Harguindey Ferrer v. Universidad Interamericana, 148 D.P.R. 12, 30 (1999); Ramos v. Marrero, 116 D.P.R. 357, 369 (1985). En otras palabras, a los fines de disponer sobre una moción de desestimación, tienen que presumirse como ciertos los hechos bien alegados en la demanda. Unisys v. Ramallo Brothers, 128 D.P.R. 842, 858 (1991); Granados v. Rodríguez Estrada I, 124 D.P.R. 1 (1989); Romero Arroyo v. E.L.A., 127 D.P.R. 724 (1991); First Fed. Savs. v. Asoc. de Condómines, 114 D.P.R. 426 (1983).
Así pues, cuando se pide la desestimación de una demanda “por vicio intrínseco de la misma, el que formula la moción hace el siguiente planteamiento: ‘Yo acepto para los propósitos de mi moción de desestimación que *1063 todo lo que se dice en esta demanda es cierto, pero aun así, no aduce una reclamación que justifique la concesión de un remedio, o no se ha unido una parte indispensable, o el tribunal no tiene jurisdicción, etc. ’ Es decir, a los efectos de considerar esta moción no se ponen en duda los hechos aseverados porque se ataca por un vicio intrínseco de la demanda o del proceso seguido ”. R. Hernández Colón, Manual de Derecho Procesal Civil, Hato Rey, Ed. Equity de Puerto Rico, 1969, pág. 179.
En virtud de lo anterior, el promovente de la moción de desestimación tiene que demostrar que, presumiendo que lo allí expuesto es cierto, la demanda no expone una reclamación que justifique la concesión de un remedio. Pressure Vessels v. Empire Gas, 137 D.P.R. 497, 505 (1994). Esta doctrina se aplica solamente a hechos bien alegados y expresados de manera clara y concluyente que, de su faz, no den margen a dudas. Colón Muñoz v. Lotería de Puerto Rico, 2006 JTS 74; Sánchez v. Autoridad de los Puertos, 153 D.P.R. 559, 569 (2001); Pressure Vessels v. Empire Gas, supra, pág. 505.
De igual forma, ante una moción de desestimación, las alegaciones hechas en la demanda hay que interpretarlas conjuntamente, liberalmente y de la manera más favorable posible para la parte demandante. Dorante v. Wrangler, 145 D.P.R. 408, 414 (1998). La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. Pressure Vessels v. Empire Gas, supra, pág. 505. (Enfasis nuestro).

Falta de parte indispensable

La Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 16.1, dispone:

“32a L.P.R.A. § Regla J6.1 Acumulación indispensable.

Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada. ”

Una parte indispensable es aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio. Cepeda Torres v. García Ortiz, 132 D.P.R. 698 (1993). Esta regla persigue el propósito de proteger a la persona ausente de los posibles efectos perjudiciales de un dictamen judicial y evitar la multiplicidad de pleitos. Aponte v. Román, 145 D.P.R. All (1998).
Una vez se concluya que una parte es indispensable, el pleito no podrá adjudicarse sin su presencia. Pérez v. Morales, res. el 28 de septiembre de 2007, 2007 JTS 176, 172 D.P.R. _ (2007) Id. En tal caso, dicha persona tiene que hacerse formar parte en el pleito. Id. “De tal arraigo es el interés de proteger a las partes indispensables, que la no inclusión en el pleito de una parte indispensable constituye una defensa irrenunciable, la cual puede presentarse en cualquier momento durante el proceso. Incluso, los tribunales apelativos deben levantar motu. proprio la falta de parte indispensable, debido a que ésta incide sobre la jurisdicción del tribunal. De reconocerse que está ausente una parte indispensable, debe desestimarse la acción. Sin, embargo, dicha desestimación no tendrá el efecto de una adjudicación en los méritos ni, por ende, de cosa juzgada. ” [Citas omitidas]. Id.

Sobre las enmiendas a las demandas

Nuestro ordenamiento concede aihplia discreción al Tribunal de Primera Instancia para reglamentar los procedimientos ante sí de forma que se logre una solución rápida, justa y económica de los litigios. Regla 1 de *1064 Procedimiento Civil, 32 L.P.R.A. Ap. IV., R. 1. Chévere v. Levis, 150 D.P.R. 525 (2000), 2000 J.T.S. 56, a la pág. 853; Amaro González v. Fin Fed. Savs., 132 D.P.R. 1042, 1054 (1993); Lluch v. España Service Sta., 117 D.P.R. 729, 743-744 (1986).
Dicha facultad, desde luego, incluye la concesión de permiso para enmendar una demanda, cuando ello es solicitado por una parte. Según ha expresado el Tribunal Supremo de Puerto Rico, este tipo de solicitudes han de ser acogidas con liberalidad. Véase, Álamo v. Supermercado Grande, Inc., 158 D.P.R. 93 (2002); Cruz Cora v. UCB/Trans Union P.R. Div., 137 D.P.R. 917, 922 (1995); Ñeca Mortg. Corp. v. A & W Dev. S.E., 137 D.P.R. 860, 867-868.
La Regla 13.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 13.1, establece, en este sentido, que el Tribunal debe conceder permiso para enmendar una demanda ''liberalmente cuando la justicia así lo requiera ". Ñeca Mortg. Corp. v. A & W Dev. S.E., supra.
La Regla 13.2 contempla incluso que las alegaciones sean enmendadas durante el juicio del caso, mediante la evidencia presentada, y ordena que el permiso para introducir una enmienda en esta etapa tan tardía también sea concedido "liberalmente". 32 L.P.R.A. Ap. Ill, R. 13.2.
Las enmiendas a una demanda pueden ampliar las causas de acción presentadas originalmente, añadir nuevas causas de acción o nuevas partes al procedimiento. Cruz Cora v. UCB/Trans Union P.R. Div., supra.
Lo anterior no quiere decir que las partes gocen de facultad irrestricta de enmendar sus alegaciones a su antojo. Al determinar si se permite o no una enmienda a las alegaciones, el Tribunal Supremo de Puerto Rico ha indicado que debe considerarse el momento en que se solicita, su impacto para la pronta adjudicación de la cuestión litigiosa, la razón o ausencia de ella para la demora e inacción original, el perjuicio que conllevaría para la otra parte y sus méritos intrínsecos. Álamo v. Supermercado Grande, supra; Ortiz Díaz v. R & R Motor Sales Corp., 131 D.P.R. a las págs. 836-837 (1992); Vidal, Inc. v. Suro, 103 D.P.R. 793, 796 (1976); Torres Cruz. v. Municipio, 103 D.P.R. 217, 220 (1975); véase, además, Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20, 29-30 (1986).
Para hacer una determinación de cuándo es que procede el acumularse en una demanda a una parte indispensable, el tribunal debe hacer un análisis juicioso respecto a si los derechos de la parte ausente se verían afectados de no ser unida en el procedimiento. Sánchez v. Sánchez, 154 D.P.R. 645, 677 (2001). Véase, LA. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo I, San Juan, Publicaciones J.T.S., 2000, págs. 371 - 372. Cada caso debe ser analizado de manera individual y particular a fin de determinar si la ausencia de una parte afectaría la validez del dictamen. Unisys v. Ramallo Brothers, 128 D.P.R. 842, 859 (1991). El no incluir en una demanda a una parte indispensable, puede ser motivo para desestimar un pleito. Meléndez. Gutiérrez v. E.L.A., 113 D.P.R. 811, 816 (1983); Banco de la Vivienda v. Ortiz, 130 D.P.R. 730, 737 (1992).
No obstante, el foro de instancia puede ordenar que se acumule en el pleito una parte indispensable, ya sea como demandante o demandada según corresponda, “para evitar que la persona ausente se vea privada de su propiedad sin un debido proceso de ley [...]”. Además, para que la inclusión de una parte indispensable cumpla el propósito de que “el remedio adjudicado sea completo”. Pérez, v. Morales, opinión de 28 de septiembre de 2007, 2007 J.T.S. 176, pág. 205.
De reconocerse por el foro intermedio apelativo que la sentencia dictada por un foro de instancia es nula y ordenar su desestimación por no haberse acumulado una parte indispensable, no impide que la demanda se pueda volver a presentar incluyendo a dicha parte y no aplica la doctrina de cosa juzgada. Id.
*1065 Ill
De la resolución recurrida surge que el foro recurrido hizo una ponderada evaluación de todas y cada una de las solicitudes de los peticionarios, respecto a la desestimación de las causas de acción en su contra. Ello lo hizo' a la luz de las normas que disponen los criterios a tenor de los cuales deben atenderse las mociones de desestimación. Hecha su evaluación, consideró que en este caso no procedía desestimar las causas de acción. Concibió que la privación a un litigante de su día en corte es una medida procedente sólo en casos extremos. Expresó que una demanda de daños y perjuicios sólo tiene que contener una relación sucinta y sencilla de la reclamación demostrativa de que la parte demandante tiene derecho a un remedio.
Concluyó que, evaluados los argumentos de las partes y el expediente judicial, tomando como ciertos los hechos alegados en la Segunda demanda enmendada, no podía resolver que la demanda dejaba de exponer una reclamación que justifique la concesión de un remedio. Ello así, por surgir cuestionamientos sobre la intención de las partes al pactar el contrato, elementos de credibilidad y veracidad relacionados con los hechos esenciales que tienen que ser dirimidos mediante juicio en su fondo y que se determinarán una vez se descubra la parte. Asimismo, el foro recurrido determinó, en cuanto a la defensa de falta de parte indispensable presentada por los peticionarios, citando en su apoyo la norma sentada en Meléndez Gutiérrez v. E.L.A., 113 D.P.R. 811 (1983), que dicha omisión no debía dar lugar a desestimar, ya que el tribunal puede, a solicitud de parte interesada, conceder oportunidad de traerla al pleito, siempre y cuando pueda el Tribunal adquirir jurisdicción sobre ésta.
El foro recurrido reiteró, en torno a la solicitud de desestimación sobre fraude de acreedores y para descorrer el velo corporativo, que como norma general, el principio de que la corporación es una entidad distinta y separada de sus accionistas debe respetarse. No obstante, expresó que para que proceda rasgar el velo corporativo, la parte que lo solicita tiene el peso de la prueba para que, por vía de excepción y a base de los criterios y normas jurisprudenciales, se conceda dicho remedio. No obstante, concluyó que ello requiere el desfile de prueba.
Por su parte, Caribbean Hospital, en su oposición a la expedición del recurso solicitado por los peticionarios, expresa que la etapa en la que se encuentra el pleito convierte en prematura las solicitudes de desestimación, por cuanto las etapas de descubrimiento de prueba aún están en sus inicios. Nos pide que evaluemos las solicitudes de desestimación a la luz de los estándares establecidos bajo el crisol de la Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 10. Asimismo, señala en cuanto a las alegaciones sobre caducidad de la causa de acción de nulidad del contrato de compra del hospital, aduce apoyándose en la norma sentada en Félix Ríos v. Municipio de Isabela, 159 D.P.R. 839 (2003), que las acciones para decretar la inexistencia de un contrato nunca prescriben, por lo que no procede dicha alegación, al tratarse de un cuestionamiento de nulidad radical del contrato. Además, sostiene que las enmiendas a las alegaciones se retrotraen a la fecha de la presentación de la demanda original, conforme resuelto en Bucetta v. Motorota Electrónica, Op. de 9 de abril de 2008, 2008 JTS 79. Asimismo, adujo que según ha expresado el Tribunal Supremo desde el caso de García Molina v. Gobierno de la Capital, 72 D.P.R. 138 (1951), las acciones ejercitadas contra cualquiera de los deudores solidarios perjudican a todos por igual a todos los acreedores y deudores.
Este Tribunal ha evaluado cuidadosamente las alegaciones de las partes, tomando como ciertos los hechos alegados en la demanda y a la luz de los criterios dispuestos para la expedición del auto de certiorari, conforma a la Regla 40 del Reglamento del Tribunal de Apelaciones. Del análisis realizado, no nos hemos convencido de que procede que sustituyamos el ejercicio ponderado de la discreción del foro recurrido. Los peticionarios' tampoco han demostrado que el Tribunal de Primera Instancia incurriera en algún error de derecho o que abusara de su discreción al continuar con el caso y esperar a un juicio plenario para dilucidar las causas de acción planteadas por la recurrida en su reclamación. Resolver lo contrario, más bien puede prestarse para despojar a un litigante de su día en corte. Entendemos que al denegar la Moción de Desestimación presentada por los peticionarios, el foro primario ejerció su discreción razonable y adecuadamente.
*1066 Por los fundamentos discutidos, se deniega la expedición del recurso de certiorari presentado y, en consecuencia, se declara sin lugar la moción de auxilio de jurisdicción sometida.
Lo acordó el Tribunal y lo certifica la Secretaria.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIO 2009 DTA 55

1. Los codemandados añadidos fueron los siguientes: Caribbean Anesthesia Services Management, Inc.; Dr. Alvin Ramírez, su esposa Fulana de Tal y la Sociedad Legal de Gananciales compuesta por ambos; Dr. José de Jesús Toro, su esposa Sutana de Tal y la Sociedad Legal de Gananciales compuesta por ambos; Sr. José L. Quirds, su esposa Perenceja de Tal y la Sociedad Legal de Gananciales compuesta por ambos; Dr. Manuel Antonio Cruzo Soto, su esposa Sutaneja de Tal y la Sociedad Legal de Gananciales compuesta por ambos; y Compañías Aseguradoras A, B y C.