Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| OBED MORALES COLÓN<br><br>Recurrido<br><br>v.<br><br>AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO<br><br>Recurrente | KLRA202400208 | REVISIÓN JUDICIAL procedente de la Oficina de Apelaciones, Autoridad de Acueductos y Alcantarillados<br><br>Caso núm.:<br>AO-22-008<br><br>Sobre: Aumento por Reinstalación |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres, la jueza Rivera Pérez y el juez Campos Pérez.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de mayo de 2024.

Comparece ante este tribunal apelativo la Autoridad de Acueductos y Alcantarrillados (la AAA o la recurrente) mediante *Solicitud de Revisión Administrativa* solicitándonos que revoquemos la *Resolución Final* emitida por la Oficina de Apelaciones de la Autoridad de Acueductos y Alcantarrillados (la Oficina de Apelaciones o la recurrida) el 29 de febrero de 2024, notificada el 1 de marzo posterior. Mediante este dictamen, el foro administrativo declaró *Con Lugar* la apelación instada por el Sr. Obed Morales Colón (el señor Morales Colón o el recurrido) y ordenó a la AAA conceder el aumento salarial solicitado en el recurso.

Por los fundamentos que expondremos más adelante, se revoca la *Resolución Final* recurrida.

**I.**

Surge del recurso que, el 2 de agosto de 2022, el señor Morales Colón incoó *Apelación* ante la Oficina de Apelaciones donde reclamó <u>aumento por reinstalación</u> en su puesto de carrera dentro de la AAA.

En esencia, argumentó que del 2013 al 2017 ocupó un puesto de confianza y que, el 30 de marzo de 2017, fue reinstalado a su puesto de carrera como Asesor Legal en la Oficina de Asesoramiento Legal de la AAA. A base de ello, y de conformidad con la Carta Circular de la Oficina de Gerencia y Presupuesto OGP 145-17 de 6 de abril de 2017 intitulada *Disposiciones para el Establecimiento de Guías Aclaratorias Sobre las Disposiciones Consignadas en el Artículo 11 de la Ley Núm. 66-2014, según enmendada, y su Vigencia Bajo la Ley Núm. 3-2017* instó un primer recurso ante la Comisión Apelativa del Servicio Público (CASP) en la que, entre otras peticiones, solicitó la concesión del aumento por reinstalación con efectividad a la fecha en que fue reubicado.

Expuso que, en aquel entonces, la CASP así como esta Curia (caso KLRA202100456) concluyeron que tanto la Ley Núm. 66-2014, *infra,* y la Ley Núm. 3-2017, *infra,* "prohibían **que durante la vigencia** de las leyes se concedieran aumentos por reinstalación independientemente lo establecido en la Carta Circular de OGP."[1] Añadió que, a pesar de lo decidido, aún **no se ha resuelto** si el aumento puede ser concedido luego de la vigencia de las referidas leyes y con fecha posterior a su caducidad. Por lo que, el 18 de julio de 2022 le solicitó a la Directora de Recursos Humanos y Relaciones Laborales de la AAA el aumento ya que "… lo que se prohibía era que se reclamara retroactivamente con fecha de efectividad en la cual estuviera aún vigente la Ley 3-2017."[2] Además, requirió a la AAA que completara la evaluación de sus ejecutorias durante el periodo de enero de 2013 a marzo de 2017 para determinar si el cumplía con los requisitos para un aumento por reinstalación y que el mismo fuera efectivo a partir del 1 de julio de 2021. Junto a la *Apelación* incluyó una certificación emitida en diciembre de 2016,

---

[1] Véase, Apéndice del Recurso, a la pág. 1. Énfasis y subrayado en el original.
[2] *Íd.*

por el entonces Director de Recursos Humanos y Relaciones Laborales, en la que "se hace referencia a las excelentes ejecutorias del apelante." Mediante comunicación del 1 de agosto de 2022, la AAA denegó la petición expresando que el asunto era **cosa juzgada** y que la Ley Núm. 3-2017 lo prohibía.

En virtud de lo anterior, el señor Morales Colón le solicitó a la Oficina de Apelaciones que le ordenara a la AAA finalizar la evaluación correspondiente y determinara si cumplía con los requisitos para ser acreedor del aumento por reinstalación de forma prospectiva a partir del vencimiento de la Ley Núm. 3-2017.

El 16 de agosto de 2022, la AAA instó *Moción de Desestimación por Cosa Juzgada y por Prescripción* en la que señaló, en esencia, que el pedido del recurrente está prohibido por la Ley Núm. 3-2017 la cual dispuso una "prohibición de reclamaciones retroactivas al concluir la vigencia de [dicha] ley",[3] y en su Artículo 11 expresamente proscribió el poderse conceder un aumento por la reinstalación. Asimismo, sostuvo que el petitorio constituye cosa juzgada, ya que el reclamo de aumento salarial por la reinstalación a su puesto de carrera "efectiva al 30 de marzo de 2017 fue atendido y adjudicado por la Comisión Apelativa del Servicio Público ("CASP") bajo el caso <u>Obed Morales Colón v. Autoridad de Acueductos y Alcantarillados</u>, Caso Núm. 2017-06-1306. Por lo que procede la desestimación de la apelación."[4] A su vez, argumentó que el recurrido acudió ante este Tribunal de Apelaciones para revisar esta decisión y este foro mediante Sentencia, caso *Morales Colón v. AAA,* Caso KLRA202100456, confirmó la Resolución de la CASP. Allí, se resolvió que el recurrido fue reinstalado en su puesto de carrera durante la vigencia de la Ley Núm. 3-2017 y "dicho estatuto claramente dispone que "[d]esde y durante la vigencia de esta Ley

---

[3] *Íd.*, a la pág. 9.
[4] *Íd.*, a la pág. 10.

no se concederán aumentos en beneficios económicos ni compensación monetaria extraordinaria a los empleados de las Entidades de la Rama Ejecutiva."[5]

Por su parte, la AAA adujo que la reclamación estaba prescrita acorde con la Sección 19.2 del Reglamento de Recursos Humanos, la cual preceptúa que un empleado deberá presentar su apelación dentro de los diez (10) días laborables siguientes a la fecha en que se le haya notificado la decisión o acción del Presidente Ejecutivo o su Representante Autorizado. La Oficina de Apelaciones carecerá de jurisdicción para atender reclamaciones presentadas fuera de dicho término. Así, explicó que el señor Morales Colón tenía diez (10) días a partir del 2 de julio de 2021 para instar su reclamo ante la Oficina de Apelaciones y no lo hizo. Ello, debido a que en ese instante su derecho a un aumento por reinstalación se reactivó, "lo cual negamos."[6]

El señor Morales Colón presentó oportuna oposición en la cual reiteró que al "momento no se ha resuelto si el aumento por reinstalación puede ser concedido luego del vencimiento de ambas de las leyes."[7] Por lo que, el 18 de julio de 2022 cursó la comunicación a la Directora de Recursos Humanos y Relaciones Laborales en la que, entre otros asuntos, advirtió que: "Nada impedía que la obligación se reconociera de forma prospectiva luego de que la Ley hubiese caducado."[8] En este sentido, razonó que era inaplicable la doctrina de cosa juzgada debido a que la Ley "habla de suspensión temporera, no de eliminación de beneficios. De igual manera que no se podrá reclamar retroactivamente, nada establece al exigir el cumplimiento luego de la vigencia de la Ley."[9] A su vez,

---

[5] *Íd.*, a las págs. 11 y 73.
[6] *Íd.*, a la pág. 18.
[7] *Íd.*, a la pág. 76.
[8] *Íd.*
[9] *Íd.*, a la pág. 78.

mencionó que la Carta Circular Núm. 145-17 de la OGP dice que los beneficios permanecerán paralizados y no eliminados.

El 2 de mayo de 2023, el Juez Administrativo, Héctor Urgell Cuebas, de la Oficina de Apelaciones, declaró <u>No Ha Lugar el petitorio desestimatorio presentado por la AAA</u>. Sobre la doctrina de cosa juzgada se determinó que resultaba improcedente debido a que: "el reclamo que el apelante [recurrido] formula ahora ante este foro es totalmente distinto a lo resuelto y adjudicado. ... resulta evidente que el apelante [recurrido] no tuvo la oportunidad de litigar lo que ahora alega. Nótese, además, que la solicitud del apelante [recurrido] es prospectiva y no retroactiva. .... nunca se ha pasado juicio sobre lo que tenemos ante nuestra consideración."[10]

Respecto a la alegación de la prescripción, el Juez Administrativo entendió que era improcedente, ya que el término reglamentario de diez (10) días para instar la apelación comenzó a decursar al notificarse la comunicación del 1 de agosto de 2022, por la Directora de Recursos Humanos y Relaciones Laborales, quien hizo dicha advertencia en la misma.

La AAA solicitó reconsideración a la que se opuso el recurrido. La misma fue denegada mediante *Resolución* del 30 de junio de 2023. Previo a ello, el 2 de junio, la AAA presentó *Contestación a Apelación,* en la que admitió algunas alegaciones e incluyó varias defensas afirmativas. Entre estas están: la reclamación constituye **cosa juzgada** y está prescrita, y la solicitud está expresamente vedada por la Ley Núm. 3-2027.

El 19 de julio de 2023, las partes presentaron *Informe Conjunto* en el que **estipularon trece (13) hechos**.[11] También la AAA indicó que no estipularía la certificación propuesta por el recurrido al esta **no constar en el expediente de personal** del ente

---

[10] *Íd.*, a las págs. 104-105.
[11] *Íd.*, a las págs. 137-138.

público y por no tener la oportunidad de realizar descubrimiento de prueba en torno a la misma.

El 4 de agosto, el señor Morales Colón instó *Moción en Solicitud de Resolución Sumaria* en donde planteó que las controversias son estrictamente de derecho y que procedía la resolución sumaria a su favor. El 15 posterior, este presentó moción para incluir, como documentos suplementarios a dicho pedido, la Declaración Jurada suscrita por el Sr. Alberto Feliciano Nieves, ex Director de Recursos Humanos y Relaciones Laborales de la AAA. Allí, además, afirmó que el lo supervisó y que el 21 de diciembre de 2016, el señor Feliciano Nieves le entregó una certificación que reconoce los logros obtenidos.[12] Ese mismo día, la AAA replicó expresando que objetaba la resolución sumaria del caso más apuntaló que de la referida Declaración Jurada no surgía que, al 27 de marzo de 2017, el ex funcionario ocupaba dicho cargo. Además, reiteró que no ha tenido la oportunidad de realizar descubrimiento de prueba sobre el documento.

En respuesta a dichos escritos, el 24 de agosto de 2023, la Oficina de Apelaciones emitió *Resolución y Orden* denegando la solicitud sumaria y permitió a la AAA realizar el descubrimiento de prueba. Así las cosas, surge del recurso que, el 18 de diciembre, se celebró una vista evidenciaria en la que el recurrido presentó el testimonio del Sr. Alberto Feliciano Nieves y fue admitida como exhibit la certificación suscrita por este el 21 de diciembre de 2016.[13] Además, fue admitida como exhibit de la AAA la certificación emitida por la Sra. Iris K. Vélez Rodríguez, Supervisora de Servicios, con fecha del 29 de noviembre de 2017.[14] En el recurso, se incluye un extracto de lo declarado por el testigo.

---

[12] *Íd.*, a las págs. 218-219.
[13] Véase, *Solicitud de Revisión Administrativa*, a la pág. 6.
[14] *Íd.*, a la pág. 167.

El 8 de enero de 2024, la AAA presentó *Memorando sobre Vista Evidenciaria*. En esta, detalló doce (12) determinaciones de hechos que a su entender resultaron de la prueba desfilada.[15] Además, argumentó lo declarado por el señor Feliciano Nieves. El recurrido replicó.

El 29 de febrero de 2024, notificada el 1 de marzo posterior, la Oficina de Apelaciones emitió la *Resolución Final* objetada, en la que declaró *Con Lugar* la apelación instada por el señor Morales Colón. En consecuencia, ordenó a la AAA conceder el aumento salarial por reinstalación solicitado por este. En el dictamen, se incluyeron los hechos estipulados por las partes en el *Informe Conjunto* más el foro revisado formuló nueve (9) determinaciones de hechos resultantes del testimonio del señor Feliciano Nieves "quien nos mereció entera credibilidad su declaración." Además, en el referido dictamen, el Juez Administrativo reiteró lo resuelto en las *Resoluciones* emitidas el 2 de mayo y 30 de junio de 2023, en las que atendió las solicitudes desestimatorias de la AAA donde se argumentó la doctrina de cosa juzgada y la prescripción. Así las cosas, el foro recurrido razonó que:[16]

> De la anterior disposición [en referencia al Artículo 23 de la Ley 3-2017, 3 LPRA sec. 9413] lo que primeramente resalta es que se trata de una prohibición de reclamar retroactivamente compromisos que hayan sido temporalmente suspendidos. La solicitud del apelante es para que se le conceda prospectivamente el aumento, al cesar la vigencia de la Ley. Esto es, que el referido Artículo 23 **no prohíbe que se conceda el aumento objeto de consideración**.
>
> También, **resulta evidente que se trata de una suspensión temporal del derecho a recibir el aumento por la reinstalación**.
>
> Por otra parte, es pertinente tomar en consideración lo que establecen los Artículos 4 y 6 de la indicada Ley a los efectos de que las **medidas estarían en vigor hasta el 1ro de julio de 2021** y que se dispone de la suspensión de algunos convenios colectivos, leyes o

---

[15] *Íd.*, a las págs. 227-229.
[16] *Íd.*, a las págs. 243-245.

reglamentos durante la vigencia de ésta. Lo anterior es cónsono con la [Exposición] de Motivos de la Ley.

...

Por tanto, concluimos que lo que **se dispuso por la Ley fue la suspensión temporera del aumento salarial debido a la reinstalación, pero una vez cesada la Ley nada se provee para que no se conceda prospectivamente como solicita el apelante**.

...

En torno al Reglamento de Personal de la Autoridad y corolario de lo anterior **debemos dejar establecido que el mismo continuó vigente**, salvo la suspensión temporera de aumento salarial bajo consideración.

....

[...], debemos señalar que si es cierto que la reinstalación la verificó el Presidente Ejecutivo, no es menos cierto que durante prácticamente todo el tiempo en que el apelante se desempeñó en los puestos de confianza **quien era su supervisor directo lo fue el Sr. Feliciano Nieves**. Tómese en cuenta que el Sr. Feliciano Nieves ocupó el puesto de Director de Recursos Humanos y Relaciones Laborales hasta diciembre de 2016. **Así las cosas, resulta obvio que el funcionario idóneo y lógico para emitir la evaluación del apelante lo era el Sr. Feliciano Nieves, quien así lo hizo en su carácter oficial**.

**Cabe destacar que la Autoridad en forma alguna cuestionó o impugnó la evaluación del apelante, la cual tomamos como cierta y correcta**.

[...]. **Pero lo que sí es innegable es que el apelante fue evaluado en sus ejecutorias por el funcionario responsable y con autoridad**.

En lo pertinente, y de conformidad con lo expuesto, determinamos que la Sección 15.2 (3), supra, establece que el empleado <u>tendrá</u> derecho a un incremento hasta un 10 % del sueldo que devengaba en el Servicio de Confianza. No se trata de una discreción para su cumplimiento. **Además, consideramos que es un derecho adquirido que merece nuestra completa protección**.

En el caso del apelante podemos afirmar que cumplió con los requisitos de dicha reglamentación, por lo que procede que se le reconozca y conceda el aumento salarial solicitado. (Énfasis nuestro y subrayado en el original)

Inconforme, la AAA presentó reconsideración en la que

argumentó, entre otros asuntos, que el aumento por reinstalación

<u>no es un derecho adquirido</u> por el recurrido <u>sino un beneficio</u> que

otorga el Reglamento de Recursos Humanos y depende de que se cumplan ciertos requisitos. Adujo, además, que la certificación del 21 de diciembre de 2016 no puede considerarse para efectos de la Sección 15.2 (3), *infra*, del Reglamento de Recursos Humanos de la AAA al no haber sido emitida de forma oficial y tampoco cubre todo el periodo en que este ocupó el puesto de confianza. El petitorio fue denegado por la Oficina de Apelaciones mediante Resolución del 21 de marzo de 2024, y notificada el 25 posterior.

Todavía en desacuerdo, la AAA acude ante esta Curia imputándole al foro administrativo recurrido haber incurrido en los siguientes errores:

> ERRÓ LA OA AL DETERMINAR QUE PROCEDE SE LE RECONOZCA Y SE LE CONCEDA AL RECURRIDO UN AUMENTO SALARIAL POR REINSTALACIÓN A SU PUESTO DE CARRERA OCURRIDA EL 30 DE MARZO DE 2017, Y QUE EL MISMO SEA EFECTIVO AL 2 DE JULIO DE 2021, LUEGO DE CULMINADA LA VIGENCIA DE LA LEY NÚM. 3-2017, IGNORANDO LOS PLANTEAMIENTOS DE DERECHO DE LA AAA COMO POR EJEMPLO LAS DEFENSAS DE PRESCRIPCIÓN Y COSA JUZGADA.

> ERRÓ LA OA AL CONSIDERAR LA CERTIFICACIÓN DEL 21 DE DICIEMBRE DE 2016, SUSCRITA POR ALBERTO FELICIANO, LA CUAL NO CONSTA EN LOS RÉCORDS OFICIALES DE LA AAA Y QUE FUE PRESENTADA POR EL RECURRIDO PARA FINES DE SU APELACIÓN, COMO UNA EVALUACIÓN PROPIA DE LA EJECUTORIA DEL RECURRIDO EN CUMPLIMIENTO CON LA SECCIÓN 15.2 DEL REGLAMENTO RH COMO REQUISITO PARA LA CONCESIÓN DEL AUMENTO POR REINSTALACIÓN.

El 2 de mayo de 2024, emitimos *Resolución* en la que concedimos el término de treinta (30) días a la recurrida para expresarse. El 20 de mayo siguiente, se cumplió con lo ordenado mediante escrito intitulado *Oposición a Petición de Revisión Administrativa*. Por lo que, nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo, así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Revisión judicial de las decisiones administrativas**

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que estas desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). En el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Asoc. Fcias. v. Caribe Specialty et al. II.*, 179 DPR 923, 940 (2010).[17]

No obstante, esta deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder, solamente, cuando la misma no esté basada en evidencia sustancial, cuando la agencia erró en la aplicación de la ley y cuando su actuación resulte ser una arbitraria, irrazonable o ilegal. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012). Por consiguiente, la revisión judicial de una decisión administrativa se circunscribe a analizar: (1) si el remedio concedido fue razonable; (2) si las determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. Fcias. v. Caribe Specialty et al. II, supra,* a la pág. 940.

En este ejercicio, nuestro más alto foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006). Quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho,

---

[17] Véanse, también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003).

descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Íd.*

Como corolario a lo anterior, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), Ley núm. 38-2017, 3 LPRA sec. 9675, dispone que las determinaciones de hechos realizadas, por una agencia administrativa, serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad. *Pacheco v. Estancias*, 160 DPR 409, 432 (2003). De modo, que la parte afectada deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. *Otero v. Toyota*, supra, a la pág. 728. En consecuencia, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Íd.*

Por otro lado, las conclusiones de derecho son revisables en toda su extensión. Sección 4.5, Ley núm. 38-2017, *supra*. Sin embargo, ello "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia." *Otero v. Toyota*, supra, a la pág. 729. Cuando un tribunal llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.*

En conclusión, el tribunal solo podrá sustituir el criterio de la agencia por el propio cuando no pueda encontrar una base racional

para explicar la determinación administrativa.  *Hernández, Álvarez v. Centro Unido*, 168 DPR 592 (2006).

**La Ley Núm. 3-2017 conocida como la *Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico***

En lo aquí pertinente, el 17 de junio de 2014, se aprobó la Ley Núm. 66-2014 para crear la *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, 3 LPRA sec. 9101 *et seq.*  Conforme surge de su Exposición de Motivos, dicho estatuto fue promulgado **a los fines de declarar un estado de emergencia fiscal en el gobierno** y adoptar un plan **para manejar las consecuencias de la crisis** fiscal y económica que atraviesa el país.

La legislación incluyó, entre otras cosas, una serie de disposiciones como parte de las medidas de reducción de gastos en la Rama Ejecutiva, que aplican a las corporaciones públicas.  Es por ello que nuestros Legisladores dispusieron que esta ley **tendrá primacía sobre cualquier otra**.  Artículo 3 de la Ley Núm. 66-2014, 3 LPRA sec. 9102.

Ahora bien, entre las medidas adoptadas para tratar la crisis fiscal del país, se encuentra **la no concesión de beneficios económicos ni compensación monetaria extraordinaria a los empleados de la Entidades de la Rama Ejecutiva desde y durante la vigencia de la Ley Núm. 66-2014.**  Artículo 11 inciso (a), *supra*, 3 LPRA sec. 9117.  La ley dispone que se considerará como aumento en beneficios económicos los aumentos de sueldo por años de servicio, servicio meritorio, retribución adicional por habilidades o competencia, y aumentos generales.  *Íd.*, inciso (b)(1).

De otra parte, es menester apuntalar que la Ley Núm. 3-2017, aprobada el 23 de enero de 2017, intitulada *Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico* reiteró los preceptos de

austeridad fiscal de la Ley Núm. 66-2014. De igual manera estableció como medida temporera de emergencia el no conceder aumentos en beneficios económicos ni compensación monetaria extraordinaria a los empleados de las Entidades de la Rama Ejecutiva, **incluyendo las corporaciones públicas**, desde y durante su vigencia.[18] Artículo 7 de la Ley Núm. 3-2017, 3 LPRA sec. 9397. En el referido estatuto también se consignó que "[l]a Ley 66-2014 dispondrá lo que es considerado como un aumento en beneficio económico." *Íd.*

En lo que nos atañe, el Artículo 23 de la Ley Núm. 3-2017, 3 LPRA sec. 9413, menciona que:

> **Prohibición de reclamaciones retroactivas al concluir la vigencia de esta Ley**.
>
> Con excepción de lo dispuesto en el Artículo 11 de la Ley 66-2014, sobre liquidaciones en efectivo por concepto del exceso de la licencia de vacaciones o enfermedad, **cualquier compromiso u obligación que haya sido temporalmente suspendido mientras esté en vigor esta Ley no podrá ser reclamado retroactivamente, ni configurará crédito alguno, una vez pierda su vigencia**. (Énfasis nuestro)

**Interpretación de las leyes**

De entrada, destacamos que, durante la vigencia de la Ley Núm. 3-2017, era aplicable el Código Civil de 1930 el cual fue posteriormente derogado por la Ley Núm. 55–2020. Por ende, utilizaremos para el análisis del presente recurso el Código Civil de 1930.

El Artículo 14 del derogado Código Civil, 31 LPRA sec. 14, establecía que:

> Cuando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto cumplir su espíritu. [19]

---

[18] Al respecto, el Artículo 4 de la Ley Núm. 3, *supra*, 3 LPRA sec. 9394, preceptúa que las medidas tomadas al amparo de la Ley Núm. 3 estarán en vigor hasta el **1 de julio de 2021**, salvo que antes ocurra alguna de las circunstancias establecidas.

[19] El Artículo 19 del Código Civil de Puerto Rico de 2020, en su Artículo 19, 31 LPRA sec.5341, incluye una disposición similar.

A tenor con la disposición legal antes citada, al interpretar un estatuto debemos remitirnos inicialmente al texto de la ley cuando el legislador se ha manifestado en un lenguaje claro e inequívoco. Por tales razones, al momento de interpretar una ley, la función principal de los tribunales debe consistir en lograr que prevalezca el propósito legislativo de la misma. *García Pagán v. Shiley Caribbean, etc.*, 122 DPR 193, 208 (1988).

Cuando la ley contiene un lenguaje confuso, es deber de los tribunales llenar las lagunas que hubiese y armonizar aquellas disposiciones que estén o parezcan estar en conflicto. *P.P.D. v. Gobernador*, 111 DPR 8, 13 (1981). Con relación a lo anterior, el Artículo 19 del derogado Código Civil de Puerto Rico, 31 LPRA sec. 19, exponía que el medio más eficaz y universal para descubrir el verdadero sentido de una ley en caso de duda es considerar la razón y espíritu de ella, o la causa o motivos que indujeron al poder legislativo a dictarla. *Col. Int'l Sek P.R., Inc., v. Escribá*, 135 DPR 647, 661 (1994).[20]

Ahora bien, el Tribunal Supremo ha expresado que el análisis de la ley debe hacerse teniendo en mente los fines que persigue, de forma que la ley se ajuste a la política pública que la inspira. *Zambrana Maldonado v. E.L.A.*, 129 DPR 740, 749 (1992). De igual manera, se ha resuelto que en el proceso de interpretación no se debe desvincular la ley del problema que se intenta solucionar. *Íd.* Por tales razones, los tribunales deben hacer que el derecho sirva para propósitos útiles y evitar una interpretación literal que lleve a resultados absurdos. *Pacheco v. Vargas, Alcaide*, 120 DPR 404, 409 (1998).

---

[20] Al respecto, el Artículo 20, del Código Civil de 2020, 31 LPRA sec. 5342, dispone que: Para descubrir el verdadero sentido de una ley cuando sus expresiones son ambiguas, se considerará su razón y su espíritu, mediante la atención a los objetivos del legislador, a la causa o el motivo para dictarla.

**Cosa Juzgada, Impedimento Colateral por Sentencia y Fraccionamiento de Causa**

El Código Civil de 2020, Ley núm. 55-2020, no contiene una disposición que contenga los postulados de cosa juzgada. Sin embargo, se mantiene en nuestro ordenamiento dicha doctrina de raigambre romana.[21] *P.R. Wire Prod. v. C. Crespo & Asoc.*, 175 DPR 139 (2008).

En fin, el efecto inexorable de la doctrina de cosa juzgada es que la sentencia decretada en un pleito anterior impide que en un pleito posterior se litiguen entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas, y **aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción previa**. *Méndez v. Fundación*, 165 DPR 253 (2005); *Pagán Hernández v. UPR*, 107 DPR 720, 732-733 (1978); *Mercado Riera v. Mercado Riera*, 100 DPR 940, 950 (1972).

El Tribunal Supremo de Puerto Rico, ha establecido como requisito adicional para que aplique la doctrina de cosa juzgada, que la sentencia decretada en el primer pleito se dictó por un tribunal o agencia administrativa con jurisdicción. *Vázquez v. A.R.P.E.*, 128 DPR 513, 536 (1991). En los procesos administrativos esta doctrina tiene aplicabilidad cuando se satisfacen los siguientes requisitos: (1) la agencia debe actuar en su función adjudicativa, donde resuelve las controversias ante sí; y (2) las partes deben haber tenido una oportunidad adecuada para defenderse. *Pagán Hernández v. U.P.R.*, supra, a la pág. 733. Es importante señalar, que esta defensa afirmativa puede manifestarse de tres formas en la esfera administrativa: (1) dentro de la misma agencia; (2) interagencial, o sea, entre las agencias; y (3) entre las agencias y

---

[21] A manera ilustrativa véase el Artículo 1500 del Código Civil (ed. 2020), 31 LPRA sec. 10644. El mismo dispone que "[l]a transacción produce los efectos de la cosa juzgada".

los tribunales. *Rodríguez Oyola v. Machado Díaz*, 136 DPR 250, 253 (1994).

Por otro lado, el Alto Foro ha decretado que la aplicación de esta defensa no es absoluta ni automática. Ésta no se aplicará cuando estén presentes consideraciones de orden público; o cuando su aplicación derrota los fines de la justicia y produce resultados absurdos. *Parrilla Hernández v. Rodríguez Morales*, supra; *Meléndez v. García*, 158 DPR 77, 92 (2002); *Pagán Hernández v. U.P.R.*, supra, a la pág. 736; *Mercado Riera v. Mercado Riera*, supra, a la pág. 953. También, en el ámbito administrativo la aplicación de la doctrina de cosa juzgada es flexible y depende de la naturaleza de la controversia planteada. *Pagán Hernández v. U.P.R.*, supra, a la pág. 736; *Banco de la Vivienda v. Carlo Ortiz*, 130 DPR 730, 739 (1992).

De otra parte, se reconoce en nuestro acervo jurídico la figura del impedimento colateral por sentencia y el fraccionamiento de causa, como modalidades de la doctrina de cosa juzgada. La doctrina de impedimento colateral por sentencia opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final, y la determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas. *Coop. Seg. Múlt. v. ELA*, 180 DPR 655, 672-673 (2011). En dicho contexto, la aplicación de esta doctrina impide que se litigue en un litigio posterior **un hecho esencial** que fue adjudicado mediante sentencia final en un litigio anterior. *P.R. Wire Prod. v. C. Crespo & Asoc.*, supra, a la pág. 152. Por otro lado, la figura del fraccionamiento de causa aplica, cuando el demandante tiene varias reclamaciones, **que surgen de un mismo evento**, contra un mismo demandado y presenta una de esas reclamaciones en un primer pleito. La doctrina de fraccionamiento de causa le impide presentar **otro pleito contra el mismo demandado por las otras**

**reclamaciones**. La modalidad de fraccionamiento de causa tiene el propósito de promover el fin de las controversias judiciales y evitar las molestias continuas, que ocasiona a una parte, la presentación sucesiva de pleitos sobre el mismo asunto. Esta modalidad procede, cuando el demandante obtiene una sentencia en un primer pleito y luego radica una segunda acción contra la misma parte **por otra porción de esa misma reclamación**. *Presidencial v. Transcaribe*, 186 DPR 263, 277-278 (2012).

### III.

La recurrente planteó que erró la Oficina de Apelaciones al determinar que procedía otorgarle al recurrido de manera prospectiva el aumento salarial por reinstalación que no recibió por estar vigente la Ley Núm. 3-2017, ignorando además las defensas de prescripción y cosa juzgada. Asimismo, señaló que el foro admininistrativo actuó incorrectamente al considerar la certificación suscrita por el Sr. Alberto Feliciano Nieves la cual no consta en los récords oficiales y fue presentada por el señor Morales Colón como una evaluación en cumplimiento con la Sección 15.2(3) del Reglamento de Recursos Humanos de la AAA.

Resulta imprescindible advertir que la AAA **no presentó** ante este tribunal una transcripción o una exposición narrativa de la prueba oral vertida en la vista evidenciaria celebrada ante el Juez Administrativo el 18 de diciembre de 2023, conforme lo provisto por la Regla 66 de nuestro Reglamento, 4 LPRA Ap. XXII-B R. 66. Correspondía a la recurrente solicitar la reproducción de la prueba oral al presentar su recurso de revisión, lo que no hizo. Así pues, debemos concluir forzosamente que se falló en ponernos en posición de evaluar la prueba oral desfilada, en especial el testimonio del señor Feliciano Nieves mediante el cual fue admitida en evidencia la certificación. Por tanto, no contamos con los criterios necesarios para dilucidar si la Oficina de Apelaciones incidió o no en la

apreciación de la prueba testifical y al admitir dicho documento como pieza evidenciaria.

Por su parte, y como indicamos, las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. Por consiguiente, debemos presumir que las nueve (9) determinaciones de hechos, relacionadas a dicho testimonio y consignados en la determinación recurrida, están conforme a la prueba presentada en la vista evidenciaria. Las restantes determinaciones fueron de hechos estipulados por las partes. En consecuencia, solo nos corresponde evaluar si la recurrida erró en la aplicación del derecho. Como enunciamos, la LPAUG dispone que las conclusiones de derecho serán revisables por el tribunal en todos los aspectos. Véamos.

**a.**

En los errores presentados, la AAA aduce que erró la Oficina de Apelaciones al conceder el aumento solicitado y al considerar una prueba documental que no forma parte de los récords oficiales de la agencia. Arguyó, además, que al presente caso le es aplicable la doctrina de cosa juzgada o en su defecto esta prescrita. Por estar los errores relacionados entre sí, los atenderemos conjuntamente.

En síntesis, la AAA reitera, en su recurso, que constituye cosa juzgada el reclamo del recurrido, ya que ante el foro administrativo (CASP) y esta Curia se resolvió que este no tenía derecho a recibir su aumento. Sin embargo, el Juez Administrador resolvió y lo reiteró en el dictamen aquí recurrido que resultaba improcedente su aplicación debido a que el reclamo ahora formulado es "totalmente distinto" a lo ya resuelto y adjudicado. Más aún, razonó que resultaba evidente que el recurrido no tuvo la oportunidad de "litigar" lo que ahora alega.

Como indicáramos, el efecto inexorable de la doctrina de cosa juzgada es que la sentencia decretada en un pleito anterior impide que en un pleito posterior **se litiguen entre las mismas partes** y **sobre la misma causa de acción y cosas**, las cuestiones **ya litigadas y adjudicadas, y aquellas que pudieron haber sido litigadas y adjudicadas** con propiedad en la acción previa. Del trámite procesal antes consignado surge sin duda alguna que el reclamo del señor Morales Colón es un asunto ya adjudicado.

En el presente caso no hay duda alguna en cuanto al requisito de identidad de partes. Tampoco existe controversia en relación con que ambos pleitos tratan la misma causa de acción y cosas, es decir, el derecho a un incremento de hasta un 10% del sueldo que devengaba en el puesto del Servicio de Confianza, según dispone la Sección 15.2(3) del Reglamento de la AAA. El tercer criterio es si las cuestiones ya litigadas y adjudicadas, incluso aquellas que pudieron haber sido litigadas y adjudicadas, son las mismas. Asimismo, aplica a si un hecho esencial previamente resuelto mediante sentencia válida y final es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas, tal cual exige la modalidad de impedimento colateral por sentencia. A continuación, analizamos estos criterios.

El señor Morales Colón instó su primera reclamación el 9 de abril de 2017 solicitando el incremento del 10% en su sueldo. En dicha reclamación su argumento estuvo basado en que la Ley Núm. 66 **no aplicaba** a beneficios económicos, que a su vigencia, **ya habían sido adquiridos** y formaban parte de su compensación salarial. El 2 de agosto de 2021, ya vencida la Ley Núm. 3-2017, el Oficial Examinador de la CASP emitió su informe en el cual concluyó lo siguiente:[22]

---

[22] Véase, Apéndice del Recurso, a las págs. 63-65.

Nada de lo citado nos permite deducir que el aumento de sueldo por reinstalación **es un derecho absoluto y que el mismo ya es parte de la compensación del APELANTE** por el hecho de trabajar en el servicio de confianza. Tal interpretación es errada y no es cónsona con la clara letra del postulado en cuestión.

De la disposición reglamentaria citada surge que para ser acreedor a un aumento por reinstalación se debe cumplir con los siguientes requisitos: 1. Trabajar en el servicio de confianza con derecho a reinstalación; 2. Dejar de trabajar en el servicio de confianza y ser reinstalado en el servicio de carrera; y 3. Que se evidencie que ejecutó sus funciones en el servicio de confianza de manera excelente. [...]

...

Bajo esa premisa, no cabe duda de que el APELANTE cumplió con el primer requisito desde el momento en que fue nombrado al servicio de confianza el 24 de enero de 2013. No obstante, los dos requisitos restantes se cumplieron o ser pudieron haber cumplido en una fecha posterior a la aprobación de la Ley 66. Concretamente, la Ley 66 entró en vigor el 17 de junio de 2014, mientras que el APELANTE dejó de trabajar en el servicio de confianza y fue reinstalado en el servicio de carrera el 30 de marzo de 2017.

No obstante, más importante aún, es el tercer requisito sobre evidenciar que ejecutó sus funciones en el servicio de confianza de manera excelente. Ciertamente **no existe manera lógica de que se pueda evidenciar una ejecutoria excelente en el desempeño de sus funciones** como empleado de confianza antes de efectivamente ejecutarlas y culminarlas. [...]

...

Como se ha mencionado, el APELANTE fue reinstalado a su puesto en el servicio de carrera el 30 de marzo de 2017, **momento en que la Ley 66 ya se encontraba vigente**. Recordemos que la Ley 66 es una ley de carácter socioeconómico que persigue un fin legítimo y cuyas disposiciones tienen primacía sobre cualquier otro cuerpo legal. Por lo tanto, concluimos que **la prohibición de concesión de aumento en beneficios económicos**, en su modalidad de aumentos por reinstalación, establecida en el Artículo 11(b) de la Ley 66, aplica al aumento por reinstalación solicitado por el APELANTE, por lo que **el mismo no puede ser otorgado**. [Énfasis nuestro]

Como hemos mencionado, el recurrido acudió ante esta Curia y como consignáramos, el 19 de octubre de 2021, un Panel Hermano dictó *Sentencia* en la cual confirmó que "..., a partir de la Ley 66, la

AAA estaba impedida de conceder un aumento salarial por reinstalación."[23] También resolvió que:[24]

> "[…], el aumento pretendido **no formaba parte de la compensación del Recurrente** a la fecha de vigencia de la Ley 66. Así pues, no se trata de un aumento salarial automático, **ya que el mismo está sujeto a una evaluación de su desempeño**.

> Por tanto, no es posible concluir que, a la vigencia de la Ley 66 (años antes de la reinstalación del Empleado al puesto de carrera), **ya el Recurrente fuese acreedor a dicho aumento**. Ello porque, para advenir acreedor del mismo, era necesario haber antes culminado el desempeño de sus funciones en el puesto de confianza, para así poder determinarse si hubo la "ejecutoria excelente" requerida. Más aún, en este caso **tampoco surge del récord alguna evaluación de desempeño del Empleado** mientras este ocupó la plaza de confianza. Por tanto, **aun en ausencia de la Ley 66, es cuestionable que el foro recurrido hubiese podido ordenar a la AAA** que se otorgara el aumento solicitado.

> Independientemente de lo anterior, el aumento pretendido estaba prohibido por otra razón. El Recurrente fue reinstalado en su puesto de carrera durante la vigencia de la Ley 3-2017, y dicho estatuto claramente dispone que "[d]esde y durante la vigencia de esta Ley no se concederán aumentos en beneficios económicos ni compensación monetaria extraordinaria a los empleados de las Entidades de la Rama Ejecutiva"." *Íd.* (Énfasis nuestro)

En virtud de los dictámenes antes reseñados surge con meridiana claridad que a la reclamación del recurrente le es aplicable la doctrina de cosa juzgada y debió ser desestimada de su faz. Como adelantamos, existe entre los dos pleitos en cuestión identidad de partes y la calidad en que lo fueron. También encontramos que en ambos pleitos se reclama el aumento por reinstalación. La única diferencia es que ahora el recurrido elaboró otra teoría, a saber, que la Ley Núm. 3-2017 ya no está vigente, lo cual pudo y debió haber planteado en su reclamo anterior. Incluso, aun cuando no hubiese sido posible plantearlo ante la CASP, la realidad es que dicho nuevo planteamiento en nada afecta o varia los dictámenes, y hechos, ya adjudicados.

---

[23] *Íd.*, a la pág.72.
[24] *Íd.*, a la pág. 73.

En el caso de autos ya era un hecho determinado que el aumento por reinstalación **no era un derecho absoluto ni automático, y mucho menos un derecho adquirido**. Incluso, surge claramente de los dictámenes antes citados que, independientemente de los efectos de la Ley Núm. 66-2014 y la Ley Núm. 3-2017, era cuestionable que la CASP hubiese podido ordenar a la AAA que le otorgara el aumento solicitado. Nótese que, tanto la CASP, como este foro intermedio, dictaminaron que **era requisito indispensable** que el recurrido **hubiese recibido una evaluación del desempeño de sus funciones en el puesto de confianza**. Asunto que le fue permitido **relitigar** al recurrido en el recurso de epígrafe. Por tanto, la Oficina de Apelaciones debió desestimar el presente reclamo bajo la doctrina de cosa juzgada en cualquiera de sus modalidades. Constituyó un error de derecho concluir que el reclamo era "totalmente distinto" a lo ya resuelto y adjudicado.

Por último, aun cuando no fuera aplicable la doctrina de cosa juzgada, adelantamos que es imposible avalar la pretensión del señor Morales Colón.

**b.**

Conforme establecimos en el trámite procesal antes consignado, luego de que el dictamen emitido por esta Curia adviniera final y firme,[25] el recurrido vuelve a solicitar el **mismo aumento**, pero aduciendo que le corresponde a partir del 2 de julio de 2021 cuando la Ley Núm. 3-2017 perdió su vigencia. En su escrito en oposición plantea que **ahora** lo que esta "requiriendo … es que se cumpla con la obligación y se proceda con el aumento salarial luego de la caducidad de la ley".[26] En otras palabras, el recurrido pretende que se ignore los efectos que tuvo la Ley Núm. 3-2017 sobre su reclamo, los hechos ya adjudicados, y que

---

[25] El mandato fue remitido 5 de mayo de 2022.
[26] Véase, *Oposición a Petición* … a la pág. 7.

pasados más de siete (7) años de su reinstalación, esta se considere como si hubiese ocurrido <u>luego de vencida</u> la Ley Núm. 3–2017. Sin duda alguna, forzoso es concluir que no le asiste la razón.

Añadimos a lo anterior que resulta ser un hecho incontrovertido que el recurrido <u>fue reinstalado en su puesto de carrera el 30 de marzo de 2017</u> cuando la Ley Núm. 3-2017 estaba imperante. Asimismo, es otro hecho incuestionable que, en ese instante, nació su derecho al beneficio del incremento por ajuste salarial de un 10% según concede el Reglamento de Recursos Humanos de la AAA, pero no podía ser acreedor del mismo **por mandato diáfano del estatuto**.[27] Como bien ha sido previamente adjudicado, tanto por la CASP, como por esta Curia, existía una prohibición expresa en la Ley Núm. 3-2017 para reclamar cualquier compromiso u obligación económica suspendida **desde y durante la vigencia del estatuto**, es decir, hasta el 1 de julio de 2021. Más aún, el artículo preceptúa que el aumento o la compensación monetaria **no representará un crédito** cuando la ley pierda su vigencia.

Ahora bien, el recurrido razona que al 2 de julio de 2021 ya no existía un impedimento legal y desde ese mismo día podía beneficiarse del susodicho incremento salarial por reinstalación. Precisa enfatizar que en este somero análisis el señor Morales Colón

---

[27] La Sección 15.2 del Reglamento intitulado **Ajustes en la Compensación** establece que la AAA adoptará la normativa pertinente para que sea viable para la ejecución de ajustes en los salarios de las transacciones de personal. En lo concerniente al recurso ante nos, la normativa en disputa lee:
  1. ...
  2. Reinstalación- ...
  3. Si la reinstalación es como resultado de la separación de un empleado de un puesto de confianza a uno de carrera, el empleado tendrá derecho a todos los beneficios en términos de clasificación y sueldo que se hayan extendido al puesto de carrera que ocupaba durante el término que sirvió en el servicio de confianza. También tendrá derecho a los aumentos de sueldos otorgadoos vía legislación estatal o municipal o aumentos generales y **a un incremento de sueldo hasta un 10% del sueldo que devengaba en el puesto del Servicio de Confianza. Para otorgar este reconocimiento será necesario que se evidencie la ejecutoria excelente del empleado(a)**. ... (Énfasis nuestro)

obvia por completo varios hechos previamente adjudicados, es decir, que su derecho al aumento no era absoluto ni adquirido, y que no se cumplió con el requisito de evaluación. Asimismo, olvida que el supuesto derecho a solicitar dicha compensación económica **se originó el 30 de marzo de 2017** cuando estaba en todo vigor la prohibición patente de la Ley Núm. 3-2017. Por tanto, vehementemente rechazamos la invitación que nos extiende el señor Morales Colón de recibir ajuste salarial a partir del 2 de julio de 2021 por hechos ocurridos en el 2017, lo cual es un petitorio ya adjudicado y resuelto. El permitirle realizar un reclamo prospectivo a base de un derecho de solicitud de ajuste salarial retroactivo esta claramente vedado por ley. Es decir, colegimos que lo vetado en el referido mandato legal no es susceptible de emerger sin una expresión legislativa que así lo autorice. Como destacáramos, al interpretar un estatuto debemos remitirnos inicialmente al texto de la ley cuando el legislador se ha manifestado en un lenguaje claro e inequívoco.

Agregamos a lo anterior que, como bien advierte, el Artículo 23 de la Ley Núm. 3-2017, *supra*, el legislador pretendió impedir que cualquier persona afectada pudiese, posterior a la vigencia de ley, hacer un reclamo por una compensación monetaria que dejó de percibir. Esto, siempre que estuviese fundamentado en un beneficio económico que estuviese suspendido como lo es un aumento por reinstalación. Artículo 11 de la Ley Núm. 66-2014, 3 LPRA sec. 9117. Por lo que, permitir lo contrario, resultaría en un total contrasentido con la intención legislativa y el propósito que persigue la ley.[28] Al respecto, reiteramos que como tribunal, nuestra obligación fundamental es imprimirle efectividad a la intención

---

[28] Del *Diario de Sesiones del Senado de Puerto Rico* del 18 de enero de 2017 surge que la Senadora Migdalia Padilla Alvelo, entonces Presidenta de la Comisión de Hacienda, fue quien presentó el Proyecto de la Cámara 451 (posterior Ley Núm. 3-2017) y allí, esta manifestó que entre los gastos que se proponen reducir está suspender la concesión de aumentos en beneficios económicos.

legislativa con el fin de alcanzar el propósito que persigue la ley.[29] Asimismo, y de entenderse que la Ley Núm. 3-2017 no establece que todo aumento quedó prohibido o eliminado, "[e]l profundo respeto que nos merece la intención del legislador nos obliga en determinadas ocasiones a suplir las inadvertencias en que éste pueda haber incurrido."[30]  En consecuencia, la razón y espíritu de la Ley Núm. 3-2017, así como su causa, nos lleva a concluir que cualquier derecho acontecido durante su vigencia no puede ser invocado terminada la misma con excepción de los beneficios excluidos en el propio estatuto.  Por tanto, al haber sido reinstalado en el puesto de carrera el 30 de marzo de 2017, reiteramos que no es permisible invocar un alegado derecho después de cuatro (4) años, máxime, cuando a dicha fecha estaba totalmente proscrito el ajuste salarial por reinstalación.

A su vez, se hace menester señalar que el reclamo está fundamentado en la concesión de un beneficio económico que no formaba parte de su compensación como empleado ni menos constituye un derecho adquirido según entendió en el pleito anterior el foro recurrido.  Recordemos que este es un beneficio por ajuste de salario que se creó mediante reglamento promulgado y adoptado por la AAA, más su concesión no es automática, ya que como dictaminó el Hermano Panel "el mismo [referencia al aumento] está sujeto a una evaluación de desempeño."

En cuanto a la evaluación del desempeño, el señor Morales Colón justifica su petición de ajuste salarial por reinstalación incluyendo ahora una evaluación del 21 de diciembre de 2016 que no formó parte ni fue incluida en el pleito anterior.  Incluso, del dictamen revisado surge que, en la vista evidenciaria, se presentó

---

[29] Véase, *Vázquez v. A.R.P.E.*, supra, a la pág. 523 citando *Chase Manhattan Bank, v. Mun. de San Juan,* 126 DPR 759, 766 (1990).
[30] Véase, *Hull Dobbs Co. v. Tribunal Superior*, 82 DPR 77, 84, (1961).

como evidencia la certificación suscrita por la Sra. Iris K. Vélez Rodríguez, Supervisora de Servicios de Personal de la AAA, en donde esta afirmó que dicho **documento no estaba en el Expediente de Personal** del recurrido. La certificación fue expedida el 29 de noviembre de 2017 y **fue estipulada por las partes** ante la Oficina de Apelaciones.[31] Por tanto, no podemos coincidir con lo expresado por el Juez Administrativo sobre que la "... Autoridad en forma alguna cuestionó o impugnó la evaluación del apelante, la cual tomamos como cierta y correcta."[32] En este sentido, del trámite detallado por el propio Juez Administrador, en cuanto a los documentos admitidos en evidencia durante la vista evidenciaria, surge que sí fue cuestionada de forma directa la existencia de la certificación emitida por el señor Feliciano Nieves a través de otra, de posterior fecha, que fue además estipulada por el señor Morales Colón y la AAA. Asimismo, entendemos meritorio mencionar que de las determinaciones de hechos consignadas en el dictamen recurrido no surge las razones por las cuales dicha evaluación no fue presentada en el pleito anterior. La inexistencia de la misma fue uno de los fundamentos utilizados por la CASP y esta Curia para concluir que era cuestionable que se le ordenase a la AAA otorgar el aumento solicitado.

En conclusión, examinado el expediente en su totalidad, concluimos que el foro administrativo erró en la aplicación del derecho y actuó irrazonable al concluir que procede el aumento solicitado. Reiteramos que el reclamo debió ser desestimado por ser un asunto ya juzgado.

**IV.**

Por los fundamentos antes expuestos, se revoca la *Resolución Final* recurrida.

---

[31] Véase, Apéndice del Recurso, a la págs. 238-239, y 240-241.
[32] *Íd.*, a la pág. 244.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones